IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cr-01092-MSK-CBS

WESLEY R. BROWN,
    Plaintiff,
v.

M. MICHAEL COOKE, Exec. Dir. CO. Div. of Motor Vehicles, and
ROBERT MORGAN, Office Manager, Aurora Driver's License Office,
    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
## ON DEFENDANTS' RENEWED MOTION TO DISMISS

---

Magistrate Judge Craig B. Shaffer

    This is an action brought under 42 U.S.C. § 1983 to redress an alleged violation of constitutional rights resulting from the Colorado Department of Revenue's denial of *pro se* Plaintiff Wesley R. Brown's request for a state identification card. Defendants Cooke and Morgan have moved to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1), arguing that the District Court lacks jurisdiction over Mr. Brown's claims based upon his failure to exhaust administrative remedies. By Memorandum dated November 5, 2007 (doc. # 81), Defendants' Renewed Motion to Dismiss (doc. # 48) was referred to this Magistrate Judge for findings of fact and a recommendation. The court has reviewed the pleadings, the entire case file and the applicable law and is sufficiently advised in the premises. For the following reasons, this court recommends that Defendants' Renewed Motion to Dismiss be denied.

**FACTUAL BACKGROUND**

Mr. Brown filed a Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (doc. # 1) on June 1, 2006. Mr. Brown filed his initial Complaint (doc. # 3) on June 8, 2006, requesting (1) "[t]hat his common law name change in 1975 receive Federal recognition as legal;" (2) "that his status as a homeless resident be acknowledged;" and (3) that the Colorado Division of Motor Vehicles be required to issue "a form of identification" reflecting his common law name and his status as a homeless resident. Mr. Brown's initial Complaint also requested leave to file a supporting brief. On June 23, 2006, Mr. Brown filed an amended Complaint (doc. # 4) (hereinafter the "Amended Complaint") in which he alleged that he "has a common law right to the name Wesley R. Brown under Federal Case Law, California Statutory Provision and Colorado Case Law." The Amended Complaint alleges that Defendants have denied Mr. Brown's "use of his legal name under color of state law" by refusing to re-issue his Colorado state identification card in the name Wesley R. Brown. Mr. Brown's Amended Complaint reasserted the same prayers for relief. On June 29, 2006, Magistrate Judge Boland granted Mr. Brown's request to file a brief in support of his claim. Mr. Brown filed a 77-page handwritten brief and voluminous attachments (hereinafter referred to as "Plaintiff's Brief in Support") on July 31, 2006. *See* Doc. # 8.[1]

Where a defendant's motion to dismiss pursuant to Rule 12(b)(1) takes the form of an attack on the facial sufficiency of the complaint, as in this case, the court must accept the allegations of the complaint as true. *Amoco Production Co. v. Aspen Group*, 8 F. Supp.2d 1249, 1251 (D. Colo. 1998). In determining whether subject matter jurisdiction exists, the court may

---

[1]Mr. Brown mistakenly captioned his July 31, 2006 submission as a "Complaint."

consider material other than the allegations in the complaint, but will only accept the factual allegations in the complaint as true. *Qualls v. Rumsfeld*, 412 F. Supp.2d 40, 42 (D.D.C. 2006). *See also Marie O. v . Edgar*, 157 F.R.D. 433, 435 (N.D. Ill. 1994) (holding that in ruling on a Rule 12(b)(1) motion, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists). The allegations and facts presented in Mr. Brown's Amended Complaint and supporting brief can be easily summarized.    Mr. Brown claims that he was born on June 21, 1958 in Taft, California. His parents named him "Wesley Ray Brown" and received a birth certificate bearing that same name. In 1975, when he was seventeen years old, Mr. Brown enlisted with his mother's permission in the United States Marine Corps under the name "Wesley R. Brown." While still in the Marine Corps, Mr. Brown apparently obtained a Social Security card in the name Wesley R. Brown. Mr. Brown claims that with these actions and his subsequent conduct he changed his name to Wesley R. Brown by operation of common law.[2] At some point, Mr. Brown obtained a California driver's license and a California identification card in the name Wesley R. Brown. *See* Attachment Part Three, p. 12, to Plaintiff's Brief in Support. Since at least June 19, 1992, Mr. Brown has been receiving Supplemental Security Income payments from the Social Security Administration through checks issued in the name Wesley R. Brown. *See* Attachment Part One, pp.6-10, to Plaintiff's Brief in Support.

In 1992, Mr. Brown moved from California to Colorado. At that time, he surrendered his

---

[2]California generally recognizes a person's common law right to change their name by non-fraudulent usage. *See* Cal.Civ.Proc.Code § 1279.5(a). In the alternative, California provides that name-change proceedings may be brought by the person whose name is sought to be changed, his parent, guardian or other near relative. *See* Cal.Civ.Proc.Code § 1276(a). *See also In re Marriage of Douglass*, 252 Cal. Rptr. 839, 843 n.2 (Cal.App. 1988).

3

California state identification card and received a Colorado identification card issued in the name Wesley R. Brown. See Attachment Part One, pp. 22-23, attached to Plaintiff's Brief in Support. It also appears that Mr. Brown subsequently received a Colorado driver's license also in the name of Wesley R. Brown that had an expiration date in July 2003. *See also* Attachment Part Two, p. 38, to Plaintiff's Brief in Support.[3]

Mr. Brown readily acknowledges his criminal history, which apparently includes felony convictions for grand theft in 1999 and 2001. *See* Attachment Part Two, pp. 23 and 32, to Plaintiff's Brief in Support. Mr. Brown indicates that from August 1998 until November 2005, he "was under the supervision of the California Department of Corrections." While Mr. Brown concedes he is referred to as "Wesley Ray Brown" in some law enforcement records, *see, e.g.,* Attachment Part Two, p. 15, and Attachment Part Three, p. 25, to Plaintiff's Brief in Support, Mr. Brown insists that he has used the name "Wesley R. Brown" whenever he had control over legal proceedings or the ability to express an election.

Mr. Brown applied for a Colorado state identification card on February 6, 2006. As proof of his identity, Mr. Brown produced a California driver's license bearing the name Wesley R. Brown. Mr. Brown was told that he would also have to provide a birth certificate. On or about March 15, 2006, Mr. Brown returned to the Department of Motor Vehicle offices and produced his birth certificate. His request for re-issuance of a state identification card was denied at that time.

In 1997, Mr. Brown apparently received a juror summons issued by the District and

---

[3]The Colorado Department of Motor Vehicle records attached to Plaintiff's Brief in Support reflect that PIN number 95-128-0741 was assigned to "Wesley R. Brown" at least as far back as 1995.

4

County of Denver, Colorado in the name Wesley R. Brown. *See* Attachment Part Two, p. 6, to Plaintiff's Brief in Support. Mr. Brown filed his 2005 tax return under the name Wesley R. Brown. *See* Attachment Part Two, p. 33, to Plaintiff's Brief in Support. On May 19, 2006, Mr. Brown received correspondence from the United States Department of Treasury addressed with his adopted name. *See* Attachment Part Two, p. 34, to Plaintiff's Brief in Support. On November 20, 2007, the United States Department of State issued Mr. Brown a valid passport in the name Wesley R. Brown.[4] Mr. Brown is registered to vote in Adams County, Colorado under the name Wesley R. Brown.

In 2007, Mr. Brown filed a petition in the County Court for Adams County, Colorado, requesting recognition of the common law name he had adopted prior to moving to Colorado. In a Minute Order dated August 31, 2007, the County Court held that it

> must have some specific legal authority applicable to the State of Colorado to grant Petitioner's request. Petitioner cannot comply with C.R.S. 13-15-101 due to prior record. The court unfortunately cannot grant Petitioner's request at this time.[5]

---

[4]Regulations adopted by the Department of State allow an "applicant who has changed his or her name by the adoption of a new name without formal court proceedings" to submit "with his or her application evidence that he or she has publicly and exclusively used the adopted name over a long period of time." *See* 22 C.F.R. § 51.24.

[5]The statutory provision cited in the County Court's Minute Order specifically provides a procedure for a person "desiring *to change his or her name*." *See* C.R.S. 13-15-101(1)(a) (emphasis added). Mr. Brown does not want to change his name; rather he wants the Department of Revenue to acknowledge the name he has legally adopted by operation of common law and the "true name" they previously accepted at the time they issued him a driver's license and identification card.. Without suggesting any views on the ultimate merits of this case, the court can sympathize with Mr. Brown's situation and appreciates his frustration.

**ANALYSIS**

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).

Here, Mr. Brown 's Amended Complaint alleges that he was "denied a liberty interest under color of state law" and that "privileges under common law are liberty interests protected by the Fourteenth Amendment." In various filings with the court, Mr. Brown has asserted that Defendants' refusal to issue a state identification card in his legally valid name constitutes a denial of due process and equal protection. As previously noted, the Amended Complaint seeks the following forms of relief: (1) that Mr. Brown's common law name change receive "Federal recognition as legal;" (2) "that his status as a homeless resident be acknowledged;" and (3) that the Colorado Division of Motor Vehicles be required to issue Mr. Brown an identification card reflecting his common law name and his homeless status.

This court has been charged with preparing findings of fact and a recommendation with respect to Defendants' Renewed Motion to Dismiss. Confined to those narrow parameters, my responsibility is easily discharged. Defendants' Motion to Dismiss raises a single argument: that Mr. Browns' Amended Complaint must be dismissed based on Mr. Brown's failure to request a denial hearing as provided by state law. Defendants contend that Mr. Browns' failure to exhaust his administrative remedies deprives this court of subject matter jurisdiction. In support of this

argument, Defendants rely exclusively on *Liebhardt v. Department of Revenue*, 229 P.2d 655, 371 (Colo. 1951), where the Colorado Supreme Court held that a state taxpayer's failure to avail himself of administrative remedies precluded judicial review of the Director of Revenue's "Notice of Final Determination and Assessment" of income tax deficiencies. Defendants' argument for dismissal is wholly unpersuasive.

On more than one occasion, the United States Supreme Court has held that in the ordinary case, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before initiating litigation. *See, e.g. Porter v. Nussle*, 534 U.S. 516, 523 (2002). *See also Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974) ("When federal claims are premised on [42 U.S.C. § 1983] - as they are here - we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights"). *Cf. Spence v. Latting*, 512 F.2d 93, 98 (10th Cir. 1975) ("[i]t seems now settled that the doctrine of exhaustion of remedies . . . is usually inapplicable in a § 1983 action").

Under the facts in this case, Defendants' exhaustion argument seems to contradict the information provided to Mr. Brown. Mr. Brown claims that he requested a denial hearing in an April 27, 2006 letter to the Executive Director of the Colorado Department of Motor Vehicles. Mr. Brown received a response from Robert Morgan, Manager of the Aurora, Colorado Drivers License Office on May 8, 2006. In his letter, Mr. Morgan explained that

> According to CRS 42-2-302(2)(a), we are required "to use your true name." Your name was indicated on the State Certified Birth Certificate shown in the Aurora Driver License office. The information given to you in the office is correct and we will have to stand with the decision to issue a document in the name of Wesley Ray Brown and not Wesley R. Brown. The document can be signed by using the initial

7

> "R" within your signature. . . . Please be advised that the only way to change your name on your driver license to "Wesley R. Brown" is to file for a legal name change through your county court system. Also please be advised that a request for a denial hearing, this is in reference when the department refuses you an identification card or a driver license. This does not apply when an applicant refuses to accept an identification card, because you do not agree with the Colorado Revised Statutes.[6]

*See* Exhibit A attached to Amended Complaint (doc. # 4). Mr. Morgan's letter seems to imply that a request for a denial hearing will not be granted where an applicant refuses to accept an identification card because he and the Department of Revenue disagree as to the applicant's "true name."[7] *Compare Katris v. City of Waukegan*, 498 F. Supp. 48, 54 (N.D. Ill. 1980) (holding that a rejected applicant for a liquor license was not required to exhaust administrative remedies before bringing a § 1983 suit for deprivation of civil rights). The court will not require Mr. Brown to exhaust administrative procedures that the Department of Revenue's own representative seems to suggest are inapplicable or inherently inadequate. *Cf. Johnson v. Seaboard Air Line Railroad Co. v. Pilot Freight* Carriers, 405 F.2d 645, 652 (4th Cir. 1968) (any requirement that a plaintiff exhaust his administrative remedies before applying for judicial relief presupposes that the remedy to which he is referred is an effective one). *See also Tonwal Realties, Inc. v. Beame*, 406 F. Supp. 363, 365 (S.D.N.Y. 1976) ("[w]here parties charge deprivation of civil rights and recourse elsewhere would be futile federal courts should take cognizance of their claims").

---

[6]Mr. Morgan's letter is quite unequivocal in describing the limited scope of a denial hearing and Mr. Brown's options for seeking relief. For purposes of Defendants' Motion, I will accept Mr. Morgan's representations.

[7]Defendants seemingly made the same point in their Motion for More Definite Statement (doc. # 17), filed on September 18, 2006. At page four of that Motion, Defendants suggested that Mr. Brown might not be entitled to denial hearing because "Revenue was going to issue Plaintiff an ID card in the name of Wesley Ray Brown; it was Plaintiff who refused to accept such ID card."

Accordingly, for the foregoing reasons, I recommend that Defendants' Motion to Dismiss be denied on the narrow ground asserted therein.

While this court is recommending denial, some additional comments may be helpful to the litigants. As a *pro se* litigant, Mr. Brown has done a commendable job of presenting his position and I recognize the depth of his commitment to this case. While I would hope that the parties could find some way to resolve their dispute short of continued litigation, that may be unduly optimistic. In anticipation of future motions in this case and with consideration for Mr. Brown's *pro se* status, I offer the following observations.

Normally, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.*, 493 F. 3d 1210, 1215 n. 2 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955, 1968-69 (2007) ("the old standard, 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' is 'best forgotten as an incomplete, negative gloss on an accepted pleading standard'")). Because Mr. Brown appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, the court may not "construct arguments or theories" for a *pro se* plaintiff in the absence of any discussion of those issues. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

9

Plaintiff's Brief in Support of his Amended Complaint does not explain how subject matter jurisdiction under 42 U.S.C. §1983 would permit the district court to give "Federal recognition" to his common law name or "acknowledge" his status as a homeless resident of Colorado. Based upon documents in the court's file, it would appear that the United States Departments of State and Treasury know and correspond with Mr. Brown as Wesley R. Brown. The federal government is regularly sending Mr. Brown benefits checks made payable to Wesley R. Brown. As a practical matter, it would appear that the federal government already "recognizes" Mr. Brown's chosen name.

Mr. Brown's third request for relief is more problematic. That claim raises the question of whether an individual has a constitutional right to a state identification card and, more specifically, an identification card issued in the name the applicant has assumed by operation of common law. The Fourteenth Amendment provides that no State "shall deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The United States Supreme Court has recognized that "the term 'liberty' in the Due Process Clause extends beyond freedom of physical restraint." *Michael H. v. Gerald D.*, 491 U.S. 110, 121 (1989). However, to avoid the unchecked creation of new constitutional rights, the Supreme Court has

> insisted not merely that the interest denominated as a "liberty" be "fundamental" (a concept that, in isolation, is hard to objectify), but also that it be an interest traditionally protected by our society. As we have put it, the Due Process Clause affords only those protections "so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Id.* at 122 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934). In an earlier decision, the Supreme Court recognized that the term "liberty" encompasses "those privileges long recognized

at common law as essential to the orderly pursuit of happiness by free men" and that such privileges "may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect." *Meyer v. State of Nebraska*, 262 U.S. 390, 399 (1923). *See also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (noting that the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests").

Laws that involve a fundamental right or target a suspect class are subject to strict scrutiny. *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). Under the strict scrutiny test, the government must satisfy the substantial burden of showing that the law impinging on constitutionally protected rights is suitably tailored to serve a compelling state interest. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). Where a state law does not involve a fundamental right or a suspect class, courts apply a rational basis standard, under which legislation is presumed valid and will be sustained if the statute in question is rationally related to a legitimate state interest. *Lawrence v. Texas*, 539 U.S. 558, 579 (2003). *See also Baer v. City of Wauwatosa*, 716 F.2d 1117, 1125 (7th Cir. 1983) (noting that "felons are not yet a protected class under the Fourteenth Amendment").

Mr. Brown correctly notes that California law permits a person to adopt another name by operation of common law. *See In re Arnett*, 56 Cal. Rptr.3d 1, 3 n. 3 (Cal.App. 2007). *See also* Cal.Civ.Proc.Code § 1279.5(a) (with limited exceptions, acknowledging in California the common law right of any person to change his or her name). Colorado law also acknowledges a person's common law right to change his or her name at will. *See In re Knight*, 537 P.2d 1085, 1086

(Colo. App. 1975) (holding that Colorado statutes setting forth procedures for effecting a name change merely provide an additional method and do not supersede the common law right). *See also* Note, *What's In a Name*, 2 N.Y.Law.Rev. 1, 2 (1924) (discussing the common law tradition of allowing an individual to "name himself or change his name at will" without any "solemnity or formality of any kind"). I have not found any reported case recognizing a "societal tradition of enacting laws denying" this common law right. *See Michael H. v. Gerald D.*, 491 U.S. at 123 n. 2. *See also Azeez v. Fairman*, 795 F.2d 1296, 1299 (7th Cir. 1986) (noting that "the boundaries of the concept of abusing the common law right to change one's name are obscure").

While the common law has traditionally recognized a person's right to assume whatever name they choose, the common law did not require that the world at large accept that name. Under the common law of England and the United States,

> there is no law preventing a man from taking whatever name he has a fancy for, nor are there any particular formalities required to be observed on adopting a fresh surname; but, on the other hand, if a man has been known for a considerable time by the name of his father, or by a name of repute, and he changes it for another, he cannot compel others to address him or designate him by the new one.

*Application of Dengler*, 287 N.W.2d 637, 639 n.1 (Minn. 1979). Notably, the California Attorney General's Office has recognized, "[t]o change one's name by the common law method is to exercise the freedom to unbind oneself from the given name or surname acquired through birth or prior assumption, and to identify oneself anew; it is not to unilaterally impose recognition or acceptance of the newly chosen name as an obligation incumbent upon others." 2000 WL. 769628 *2 (Ops. Cal. Atty. Gen. 136 ( June 9, 2000)). It would appear, however, that the States of California and Colorado have, in the past, accepted Mr. Brown's common law name when they issued him a driver's license and identification card bearing the name "Wesley R. Brown."

12

This court reviewed the cases cited in Plaintiff's Brief in Support of the Amended Complaint. Mr. Brown relies upon the decision in *Jech v. Burch*, 466 F. Supp. 714, 718-19 (D. Hawaii 1979), where the district court concluded that the constitutional right of privacy found in the Fourteenth Amendment protects a parent's common law right to give their child any name they wish. The court in *Jech* also recognized, however, that a parent's privacy right to name their child as they wish could be constrained by legislative action that bears some reasonable relation to a purpose within the competency of the state to effect. My own research has found contrary authority holding that "while parents have an important interests in naming their children, this interest does not rise to the level of a fundamental right." *See Brill v. Hedges*, 783 F. Supp. 333, 339 (S.D. Ohio 1991) and cases cited therein. The court in *Brill* concluded that the challenged state statute must be reviewed under the more deferential rational basis test and directed the parties to submit additional briefs on the issue of whether the state statute was reasonably related to any legitimate state interest. *Id.* at 340. The parties in this case have not submitted comparable briefs.

The court's research has not uncovered any reported decisions that establish a fundamental right to a state identification card. *Compare Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) (noting that the Supreme Court has not "afford[ed] the possession of a driver's license the weight of a fundamental right'). I am aware of the Tenth Circuit's unpublished decision in *Jorgensen v. Larsen*, 930 F.2d 922, 1991 WL 55457 (10th Cir. 1991)(Table).[8] There, the Tenth Circuit held that the plaintiff had no protected liberty interest in the use of her birth

---

[8] I recognize that as an unpublished decision, *Jorgensen* may not be cited for its precedential effect. However, it may shed light on some of the issues relevant to this case.

name on her Utah driver's license. Both the majority and the strong dissent in *Jorgensen* concluded that the constitutionality of Utah's license statute should be measured by a reasonable or rational basis test. It should be noted that the facts in *Jorgensen* are distinguishable in many respects. The district court in that case concluded that Utah's statute had replaced the applicable common law rules. Colorado's statute, to the contrary, purports to merely supplement the common law. Unlike Colorado law, which requires that a state identification card bear the applicant's "true name," the statute at issue in *Jorgensen* required each driver to obtain his license in his or "legal name." In that respect, the appellate court in *Jorgensen* noted that the plaintiff had made no effort to amend her recent divorce decree to re-assume her maiden name and apparently was continuing to use her married name even after her divorce. In fact, the plaintiff in *Jorgensen* brought her lawsuit in her married name. Finally, the district court in *Jorgensen* acknowledged that the plaintiff in that case could have changed her name simply by following the Utah statute. Obviously, Mr. Brown's felony criminal record forecloses similar relief in Colorado state courts. *Compare Chance v. DeFilippo*, 361 F. Supp.2d 21, 24 (D. Ct. 2005) (holding that plaintiff had failed to identify a cognizable property or liberty interest in challenging Connecticut's refusal to grant an "S" endorsement on his driver's license based upon state statutes that expressly permit the Department of Motor Vehicles to refuse to issue that endorsement in light of the applicant's criminal record).

Finally, I note the question of statutory interpretation implicated by Mr. Brown's Amended Complaint and Brief. My research has disclosed that as far back as 1994, Colorado law directed that an identification card should be issued in the applicant's "true name." That statutory language was in effect when, as records seem to indicate, Mr. Brown received a Colorado

14

identification card in 1995 bearing the name Wesley R. Brown.  *See* Attachment Part One, pp. 22-23, to Plaintiff's Brief in Support.  I have not been able to find any Colorado case law construing the phrase "true name."  However, this court notes that *Webster's Encyclopedic Unabridged Dictionary* (2001 ed.) defines "true" as "being in accordance with the actual state or conditions; conforming to reality or fact; not false."  *See People v. Janousek*, 871 P.2d 1189, 1196 (Colo. 1994) ("words and phrases used in statutes are to be interpreted according to their generally accepted meaning"); *Bontrager v. La Plata Elec. Ass'n Inc.*, 68 P.3d 555, 558 (Colo. App. 2003) (when interpreting a statute, the court should start with the statute's language which will be afforded its ordinary and common meaning).  When Mr. Brown claims "Wesley R. Brown" as his "true name," that would seem to conform to his actual behavior and the reality of his situation. *Cf. Hauser v. Callaway*, 36 F.2d 667, 669 (8th Cir. 1929) ("[a] man's name for all practical and legal purposes is the name by which he is known and called in the community where he lives and is best known").  Mr. Brown maintains that all he wants is a Colorado state identification card in his "true name," Wesley R. Brown.  Ironically, if Mr. Brown were to accept the identification card that the Department of Revenue is willing to issue, it would reflect a name that Mr. Brown has legally renounced.

  Finally, in pondering the issues raised by the instant litigation, I had an occasion to review the Department of Revenue's own procedures.  At first blush, it appears that the Department of Revenue provides for "Exceptions Processing" in instances where an "Applicant cannot provide the Documents otherwise required to prove the Applicant's . . . Identity."  *See Colorado Code of Regulations*, "Department of Revenue Rules for Proof Identity, Age, Residency and Lawful Presence in the Application for Driver License or Identity Card," 1 CCR 204-13(5.0).  The

15

Department's exceptions procedure provides that "[a] branch manager in consultation with an Investigator will review all available documentation to determine whether the Applicant's Identity . . . can be established by a combination of reliable Documents." As a practical matter, Mr. Brown "cannot provide" a birth certificate in the "true name" he believes he assumed in California by operation of common law, and "cannot provide" a court order legally changing his name because Colorado law prohibits a person with a felony record from petitioning the state courts to change their name. *See* C.R.S. § 13-15-101. This court cannot determine whether the exceptions procedures could be applied to resolve Mr. Brown's conundrum. However, this court refuses to believe that citizens and state officials of good will cannot work through this problem. The court also believes that the law and common sense are not mutually exclusive. I would certainly invite the parties to explore in what ways those principles might intersect.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that Defendants' Renewed Motion to Dismiss (doc. # 48) be DENIED.

IT IS FURTHER ORDERED that this matter is set for a **status conference before the court on January 25, 2008, at 11:00 a.m.**

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 18th day of January, 2008.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge