IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01092-MSK-CBS

WESLEY R. BROWN,
        Plaintiff,
v.

M. MICHAEL COOKE, Exec. Dir. CO. Div. of Motor Vehicles, and
ROBERT MORGAN, Office Manager, Aurora Driver's License Office,
        Defendants.

---

## RECOMMENDATION AND ORDER ON PENDING MOTIONS

---

Magistrate Judge Craig B. Shaffer

        This is an action brought under 42 U.S.C. § 1983 to redress an alleged violation of

constitutional rights resulting from the Colorado Division of Motor Vehicles' denial of *pro se*

Plaintiff Wesley R. Brown's request for a state identification card in his common law name.

Defendants Cooke and Morgan previously moved to dismiss the Amended Complaint pursuant

to Fed.R.Civ.P. 12(b)(1), arguing that the District Court lacked jurisdiction over Mr. Brown's

claims based upon his failure to exhaust administrative remedies. That motion was denied by the

district judge on March 6, 2008. The case now comes before this court on the following

dispositive and non-dispositive motions:[1]

---

[1]Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge
to conduct hearings and submit proposed findings of fact and recommendations with respect to
any dispositive motion. The Tenth Circuit has held that "[m]otions not designated on their face
as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they
have an identical effect." *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir.
2000), citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988). For
example, an order denying a motion to amend may be dispositive if the order effectively
removes a claim from the action. *See McFadden v. Pioneer Natural Resources USA, Inc*., 2006

(1)     Defendants' Motion for Summary Judgment (doc. # 105), filed on March
        31, 2008;

(2)     Robin White's Request for Recognition of an "Other Similarly Situated"
        (doc. # 100), filed on March 24, 2008;

(3)     Plaintiff's Motion for Order to Disclose, F.R.C.P. Rule(s) 26, 34 and 37
        (doc. # 115), filed May 13, 2008;

(4)     Plaintiff's Ex Parte Motion Concerning Plaintiff's Claim of
        Unconstitutionality of 6 C.F.R. Part 37 (doc. # 117), filed on May 19,
        2008; and

(5)     Plaintiff's Motion for Leave to Amend Complaint (doc. # 124), filed on
        May 27, 2008.

The court has reviewed the parties' briefs and exhibits, the entire case file and the applicable

law, and is sufficiently advised in the premises.

## FACTUAL BACKGROUND

Mr. Brown filed a Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. §

1915 (doc. # 1) on June 1, 2006.  Plaintiff's initial Complaint (doc. # 3), filed on June 8, 2006,

requested:  (1) "[t]hat his common law name change in 1975 receive Federal recognition as

legal;" (2) "that his status as a homeless resident be acknowledged;" and (3) that the Colorado

Division of Motor Vehicles be required to issue "a form of identification" reflecting his common

law name and his status as a homeless resident.  The initial Complaint also requested leave to file

a supporting brief.  On June 23, 2006, Mr. Brown filed an amended Complaint (doc. # 4)

(hereinafter the "Amended Complaint") in which he contends that he "has a common law right to

the name Wesley R. Brown under Federal Case Law, California Statutory Provision and

---

WL 3059967 (D. Colo. 2006) (Miller, J.), citing *Pedro v. Armour Swift-Eckrich*, 118 F. Supp.2d
1155, 1157 (D. Kan. 2000).

Colorado Case Law." The Amended Complaint alleges that Defendants have denied Mr.

Brown's "use of his legal name under color of state law" by refusing to re-issue his Colorado

state identification card in the name Wesley R. Brown. Mr. Brown's Amended Complaint

reasserted the same prayers for relief. On June 29, 2006, Magistrate Judge Boland granted Mr.

Brown's request to file a brief in support of his claims. Mr. Brown filed a 77-page handwritten

"Complaint" (doc. # 8), along with voluminous attachments on July 31, 2006.[2]

    A brief overview of pertinent statutes and administrative procedures may be helpful for

the reader. In 2006, when the operative conduct at issue in this case occurred, the Colorado

Department of Revenue was authorized to issue "a person who is a resident of Colorado" an

identification card "attested by the applicant and the department as to true name, date of birth,

current address and other identifying data the department may require."[3] *See* C.R.S. § 42-2-

302(1)(a)(I). The Department of Revenue was permitted to issue an identification card "only

upon the furnishing of a birth certificate or other documentary evidence of identity that the

department may require." *See* C.R.S. § 42-2-302(2)(a). On those occasions where the

Department "cancels, denies, or denies the reissuance of the identification card of a person, such

person may request a hearing pursuant to section 24-4-105, C.R.S." *See* C.R.S. § 42-2-

301(3)(b). As of March 2006, standard procedures adopted by the Division of Motor Vehicles

required an identification card to bear the applicant's first, middle and last name. *See* Affidavits

---

[2]While Mr. Brown mistakenly captioned his July 31, 2006 submission as a "Complaint," this court elected to treat that submission as a "Brief in Support" of his Amended Complaint.

[3]I have not found any Colorado case law construing the phrase "true name." Plaintiff contends, of course, that Wesley R. Brown has become his "true name" by operation of common law.

of Jenna Mondragon and Roni White, attached as Exhibits 1 and 2, respectively, to Defendants'
Motion for Summary Judgment.

Colorado law acknowledges a person's common law right to change his or her name at
will. *See In re Knight*, 537 P.2d 1085, 1086 (Colo. App. 1975) (holding that Colorado statutes
setting forth procedures for effecting a name change merely provide an additional method and do
not supersede the common law right). Colorado law also provides statutory procedures for
effecting a change of name. Any person desiring to change his or her name, other than a prior
felon or adjudicated juvenile delinquent, may present a verified petition to that effect to the
district or county court in the county of their residence, identifying the petitioner's full name,
their desired new name, and a concise statement of the reason for the name change. *See* C.R.S. §
13-15-101(1)(a). However, this statutory procedure is not available and the court is precluded
from granting a petition for a name change "if the court finds the petitioner was previously
convicted of a felony and adjudicated a juvenile delinquent for an offense that would constitute a
felony if convicted by an adult in this state or any other state or under federal law." *See* C.R.S. §
13-15-101(2)(b).

For purposes of the pending motion for summary judgment, Defendants do not contest
the following factual representations set forth in Plaintiff's July 31, 2006 Brief in Response. Mr.
Brown was born on June 21, 1958 in Taft, California. His parents named him "Wesley Ray
Brown" and received a birth certificate bearing that same name. *See* Plaintiff's Brief in Support
(doc. # 8), at 6. In 1975, when he was seventeen years old, Mr. Brown enlisted with his
mother's permission in the United States Marine Corps under the name "Wesley R. Brown." *Id.*
at 11. While still in the Marine Corps, Mr. Brown apparently obtained a Social Security card in

the name Wesley R. Brown. *Id.* at 12. Mr. Brown claims that with these actions and his

subsequent conduct he changed his name to Wesley R. Brown by operation of common law.[4] At

some point, Mr. Brown obtained a California driver's license and a California identification card

in the name Wesley R. Brown. *Id.* at 13. Since at least June 19, 1992, Mr. Brown has been

receiving Supplemental Security Income payments from the Social Security Administration

through checks issued in the name Wesley R. Brown. *Id.* at 12-13.

In 1992, Mr. Brown moved from California to Colorado. Defendants acknowledge that

since moving to Colorado, Mr. Brown has received two Colorado driver licenses and one

Colorado identification card in the name Wesley R. Brown.[5] *See* Affidavit of Jenna Mondragon,

attached as Exhibit 1 to Defendants' Motion for Summary Judgment.

Mr. Brown readily concedes that his criminal history includes felony convictions for

grand theft in 1999 and 2001. *See* Plaintiff's Brief in Support (doc. # 8), 30-32. From August

1998 until November 2005, Plaintiff "was under the supervision of the California Department of

Corrections." Plaintiff has produced criminal records from California, Colorado and the Federal

Bureau of Investigation which identify his name as Wesley Ray Brown or list that name as an

a/k/a. *Id.* at 15, 16, 18-24, 26, 27 and 30-32. Nevertheless, Plaintiff insists that he has used the

---

[4]California generally recognizes a person's common law right to change their name by non-fraudulent usage. *See In re Arnett*, 56 Cal. Rptr.3d 1, 3 n. 3 (Cal.App. 2007). *See also* Cal.Civ.Proc.Code § 1279.5(a) (with limited exceptions, acknowledging in California the common law right of any person to change his or her name). In the alternative, California provides that name-change proceedings may be brought by the person whose name is sought to be changed, his parent, guardian or other near relative. *See* Cal.Civ.Proc.Code § 1276(a). *See also In re Marriage of Douglass*, 252 Cal. Rptr. 839, 843 n.2 (Cal.App. 1988).

[5]The Colorado Department of Motor Vehicle records reflect that PIN number 95-128-0741 was assigned to "Wesley R. Brown" at least as far back as 1995.

name Wesley R. Brown whenever he had control over legal proceedings or the ability to express an election.

In 1997, Mr. Brown received a juror summons issued by the District and County of Denver, Colorado in the name Wesley R. Brown. *Id.* at 25. Mr. Brown filed his 2005 tax return under the name Wesley R. Brown. *Id.* at 33. In 2006, Mr. Brown was receiving correspondence from the United States Department of Treasury addressed with his adopted name. On November 20, 2007, the United States Department of State issued Mr. Brown a valid passport in the name Wesley R. Brown.[6] *See* Exhibit 5, attached to Defendants' Motion for Summary Judgment. Plaintiff is registered to vote in Adams County, Colorado under the name Wesley R. Brown.

Mr. Brown applied for a Colorado state identification card on February 6, 2006 at the Division of Motor Vehicles' driver license office in Aurora, Colorado. As proof of his identity, Mr. Brown produced a California driver's license bearing the name Wesley R. Brown. Mr. Brown was told that he needed to produce a copy of his birth certificate in order to obtain an identification card. On or about March 15, 2006, Mr. Brown returned to the Division of Motor Vehicles office and produced his birth certificate bearing the name Wesley Ray Brown, as well as two forms of identification issued in California. Jenna Mondragon, the Division employee who assisted Mr. Brown on March 15, 2006, used the full name on the California birth certificate to issue Plaintiff a Colorado identification card in the name Wesley Ray Brown. Ms. Mondragon claims that Mr. Brown refused to accept that identification card and it was voided.

---

[6]Regulations adopted by the United States Department of State allow an "applicant who has changed his or her name by the adoption of a new name without formal court proceedings" to submit "with his or her application evidence that he or she has publicly and exclusively used the adopted name over a long period of time." *See* 22 C.F.R. § 51.24.

Ms. Mondragon maintains that she followed standard Division procedures and policies in processing Mr. Brown's request. Defendants acknowledge that in the past, Mr. Brown had received driver licenses and identification cards in the name Wesley R. Brown, based upon then-applicable procedures which allowed the use of a middle initial. Defendants contend that the option of using a middle initial in lieu of the applicant's full middle name was no longer available when Mr. Brown applied for a new identification card in March 2006.[7]

Mr. Brown claims that he requested a denial hearing in an April 27, 2006 letter to the Executive Director of the Colorado Division of Motor Vehicles. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, at 5. It is undisputed that Mr. Brown received a response from Robert Morgan, Manager of the Aurora, Colorado Drivers License Office on or about May 8, 2006. In his letter, Mr. Morgan explained that

> According to CRS 42-2-302(2)(a), we are required "to use your true name." Your name was indicated on the State Certified Birth Certificate shown in the Aurora Driver License office. The information given to you in the office is correct and we will have to stand with the decision to issue a document in the name of Wesley Ray Brown and not Wesley R. Brown. The document can be signed by using the initial "R" within your signature. . . . Please be advised that the only way to change your name on your driver license to "Wesley R. Brown" is to file for a legal name change through your county court system. Also please be advised that a request for a denial hearing, this is in reference when the department refuses you an identification card or a driver license. This does not apply when an applicant refuses to accept an identification card, because you do not agree with the Colorado Revised Statutes.

*See* Exhibit A attached to Amended Complaint (doc. # 4). Mr. Brown interprets Mr. Morgan's

---

[7]Plaintiff disputes this assertion, claiming that "he knows of at least two residents that have their usual signature on their identification card, not their birth name. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment. However, Mr. Brown has provided no evidence to support this assertion. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005) (holding that "conclusory allegations without specific supporting facts have no probative value" in the context of a motion for summary judgment).

letter as refusing his request for a denial hearing. *See* Plaintiff's Response to Defendants'

Motion for Summary Judgment, at 5.

In 2007, Mr. Brown filed a petition in the County Court for Adams County, Colorado,

requesting recognition of the common law name he had adopted prior to moving to Colorado. In

a Minute Order dated August 31, 2007, the County Court held that it

> must have some specific legal authority applicable to the State of Colorado to
> grant Petitioner's request. Petitioner cannot comply with C.R.S. 13-15-101 due to
> prior record. The court unfortunately cannot grant Petitioner's request at this
> time.[8]

## ANALYSIS

A.     *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). *See also Redmon v. United States*, 934 F.2d 1151, 1155 (10th

Cir.1991); *Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th

Cir.1991). The moving party bears the initial burden of showing that there is an absence of any

issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of*

*Watonga*, 942 F.2d 737, 743 (10th Cir. 1991). The movant need not negate the non-movant's

claim, but rather simply point to an absence of evidence to support the non-movant's claim.

---

[8]The statutory provision cited in the County Court's Minute Order specifically cites to a
procedure for a person "desiring *to change his or her name*." *See* C.R.S. 13-15-101(1)(a)
(emphasis added). Mr. Brown maintains that he is not trying to change his name; rather he
wants the Division of Motor Vehicles to officially recognize the name he believes he has legally
adopted by operation of common law, and the "true name" Division previously accepted when it
issued him a driver's license and identification card.

*Celotex Corp. v. Catrett*, 477 U.S. at 325; *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994). If the moving party meets this burden, the non-moving party may not rest upon his pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*, 477 U.S. at 251-52. Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp.2d 1246, 1252 (D. Colo.1998).

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [plaintiff] must allege . . . the deprivation of a federal right . . . .")

(internal quotation marks and citation omitted). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Mr. Brown's Amended Complaint alleges that he has a constitutionally protected liberty interest in his common law name that was violated when Defendants refused to issue him a state identification card in that common law name. Plaintiff asserts that Defendants' refusal to issue the requested identification card constitutes a denial of due process and equal protection. More specifically, the Amended Complaint seeks a judicial order requiring the Colorado Division of Motor Vehicles to issue Mr. Brown an identification card reflecting his common law name and his homeless status. Mr. Brown's Amended Complaint raises the question of whether an individual has a constitutional right to a state identification card issued in the name the applicant has assumed by operation of common law.

The Fourteenth Amendment provides, in pertinent part, that no State "shall deprive any person of life, liberty, or property without due process of law." "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *KT & G Corp. v. Attorney General of the State of Oklahoma*, 535 F.3d 1114, 1141 (10th Cir. 2008).

The United States Supreme Court has recognized that "the term 'liberty' in the Due

Process Clause extends beyond freedom of physical restraint." *Michael H. v. Gerald D.*, 491 U.S. 110, 121 (1989). The concept of "liberty" encompasses "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men," and such privileges "may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect." *Meyer v. State of Nebraska*, 262 U.S. 390, 399 (1923). *See also Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258 (1997) (noting that the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests").

However, to avoid the unchecked creation of new constitutional rights, the Supreme Court has held that the interest or privilege being asserted must be one traditionally protected by society and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Michael H. v. Gerald D.*, 491 U.S. at 121.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). *Cf. Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005) (noting that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion). Recognizing new fundamental rights "'to a great extent, [p]laces the matter outside the arena of public debate and legislative action' and risks transforming the Due Process Clause 'into the policy preferences of

the Members of the Court.'"  *Seegmiller v. Laverkin City*, 528 F.3d 762, 770 (10th Cir. 2008)

quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

In addressing the pending motion, the court must first carefully describe the fundamental

liberty interest asserted in the Amended Complaint.  Second, the court must decide whether this

asserted liberty interest is "objectively, deeply rooted in this Nation's history and tradition, and

implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they

were sacrificed."  *Seegmiller v. Laverkin City*, 528 F.3d at 769 (internal citations omitted).

While the common law has traditionally recognized a person's right to assume whatever

name they choose, the common law did not require that the world at large accept that name.

Under the common law of England and the United States,

> there is no law preventing a man from taking whatever name he has a fancy for,
> nor are there any particular formalities required to be observed on adopting a
> fresh surname; but, on the other hand, if a man has been known for a considerable
> time by the name of his father, or by a name of repute, and he changes it for
> another, he cannot compel others to address him or designate him by the new one.

*Application of Dengler*, 287 N.W.2d 637, 639 n.1 (Minn. 1979).  *See also* Note, *What's In a*

*Name*, 2 N.Y.Law.Rev. 1, 2 (1924) (discussing the common law tradition of allowing an

individual to "name himself or change his name at will" without any "solemnity or formality of

any kind").  Notably, the California Attorney General's Office has recognized, "[t]o change

one's name by the common law method is to exercise the freedom to unbind oneself from the

given name or surname acquired through birth or prior assumption, and to identify oneself anew;

it is not to unilaterally impose recognition or acceptance of the newly chosen name as an

obligation incumbent upon others."  2000 WL 769628 *2 (Ops. Cal. Atty. Gen. 136 ( June 9,

2000)).  *See also Masjid Muhammad-D.C.C. v. Keve*, 479 F. Supp. 1311, 1324 (D. Del. 1979)

("a State may identify its citizens by any name, number or symbol it chooses, and it may do so consistent with the First Amendment even though the means of identification may be personally offensive to the person identified").

While Mr. Brown has a right to change his name by operation of common law, his Amended Complaint more narrowly asserts a fundamental right to official recognition of that common law name through the acquisition of a state identification card. Plaintiff has not directed the court to any reported decision recognizing such a fundamental liberty interest. Indeed, the case law seems to hold to the contrary. *See, e.g.*, *Barnes v. Conley*, 229 F.3d 1150 (6th Cir. 2000) (Table) (holding that a prisoner who had no religious basis for changing his name had no federal constitutional right to force a state court to legally change his name); *Jorgensen v. Larsen*, 930 F.2d 922, 1991 WL 55457 (10th Cir. 1991)(Table) (plaintiff had no protected liberty interest in the use of her birth name on her Utah driver's license);[9] *Kirwan v. Larned Mental Health*, 816 F. Supp. 672, 673-74 (D. Kan. 1993) (holding that prison regulations requiring a inmate to respond to the name under which he was convicted did not violate the Constitution, where the plaintiff had changed his name for personal reasons and the complaint set forth no First Amendment claim regarding the exercise of plaintiff's religious beliefs or his right of association); *Mujihadeen v. Compton*, 627 F. Supp. 356, 357 (W.D. Tenn. 1985) (where a prisoner had legally changed his name for religious reasons, prison authorities did not violate the plaintiff's constitutional rights by requiring that his identification card include both the prisoner's committed name and the name he adopted for religious purposes).

---

[9]I recognize that as an unpublished decision, *Jorgensen* may not be cited for its precedential effect. However, it may shed light on some of the issues relevant to this case.

Indeed, the court's own research has not uncovered any reported decisions that establish a fundamental right to a state identification card. I have, however, found several instances where courts declined to find a constitutional violation based upon a refusal to issue a driver's license. *See, e.g., Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) (noting that the Supreme Court has not "afford[ed] the possession of a driver's license the weight of a fundamental right'); *Mullins v. Commonwealth of Virginia*, 2007 WL 120835, *1 (W.D. Va. 2007) (finding no constitutional violation based upon defendants' refusal to renew plaintiff's driver's license since the right to drive is not a fundamental right); *Chance v. DeFilippo*, 361 F. Supp.2d 21, 24 (D. Conn. 2005) (holding that plaintiff had failed to identify a cognizable property or liberty interest in challenging Connecticut's refusal to grant an "S" endorsement on his driver's license based upon state statutes that expressly permit the Department of Motor Vehicles to refuse to issue that endorsement in light of the applicant's criminal record); *John Doe No. 1 v. Georgia Department of Public Safety*, 147 F. Supp.2d 1369, 1375 (N.D. Ga. 2001) (holding that a legal resident of Georgia does not have a constitutional right to a driver's license). I find no justification for according more stringent rights with respect to a state identification card.

This court does not question Mr. Brown's commitment to this litigation or his persistence in pursuing his claims. However, persistence alone will not suffice. *See Seegmiller v. Laverkin City*, 528 F.3d at 771 (noting that "[not] all important, intimate, and personal decisions . . . are protected [by substantive due process]"). Plaintiff simply has not sustained his burden under the prevailing standards this court must apply. *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) ("to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest")

(internal citations omitted).  I conclude that the Colorado Division of Motor Vehicles did not deprive Mr. Brown of a fundamental right or benefit when it declined to give Plaintiff an identification card in his common law name.

Mr. Brown also claims that Defendants' refusal to furnish an identification card in his common law name constitutes a denial of equal protection.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To properly assert an equal protection claim, a plaintiff must allege sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Laws that involve a fundamental right or target a suspect class are subject to strict scrutiny.  *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).  Under the strict scrutiny test, the government must satisfy the substantial burden of showing that the law impinging on constitutionally protected rights is suitably tailored to serve a compelling state interest.  *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).  Where a state law does not involve a fundamental right or a suspect class, courts apply a rational basis standard, under which legislation is presumed valid and will be sustained if the statute or governmental action in question is rationally related to a legitimate state interest.  *Lawrence v. Texas*, 539 U.S. 558, 579 (2003).

Colorado's statutes and procedures governing the issuance of a state identification card

do not infringe on a fundamental right. Those same statutes and procedures do not distinguish among persons because of a protected classification, and Mr. Brown has not alleged that he is a member of a constitutionally protected class. Plaintiff's status as a ex-felon or his condition of homelessness do not bring him within a suspect class. *Cf. Johnson v. Fields*, 21 F.3d 1121, *3 (10th Cir. 1994) (Table) (convicted felons are not a constitutionally recognized suspect class); *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1125 (7th Cir. 1983) (noting that "felons are not yet a protected class under the Fourteenth Amendment") *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir. 1970) (noting that "a classification based on criminal record is not a suspect classification"); *Kindem v. City of Alameda*, 502 F. Supp. 1108, 1111 (N.D. Cal. 1980) ("[E]x-felons are not thought to constitute a suspect class" requiring application of a strict scrutiny standard). *See also Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) ("homeless persons are not a suspect class") and cases cited therein. While Mr. Brown states that he has been diagnosed as suffering from schizophrenia, a mental disability does not constitute a suspect classification for equal protection purposes. *See, e.g., Salcido ex rel. Gilliland v. Woodbury, County*, 66 F. Supp.2d 1035, 1050 (N.D. Iowa 1999); *Beckford v. Irvin*, 49 F. Supp.2d 170, 177 (W.D.N.Y. 1999).

Having concluded that Mr. Brown does not have a fundamental right to a state identification card bearing his common law name, Defendants' actions in this case are measured by the highly deferential rational basis standard. *Cf. Brill v. Hedges*, 783 F. Supp. 333, 339 (S.D. Ohio 1991) (noted that "while parents have an important interests in naming their children, this interest does not rise to the level of a fundamental right;" concluded that the challenged state

statute must be reviewed under the more deferential rational basis test).[10]  Under that standard,

Plaintiff bears the burden of showing that the statutes and administrative actions at issue in this

case do not further a legitimate state purpose by rational means.  *See Powers v. Harris*, 379 F.3d

1208, 1215 (10th Cir. 2004).  Where governmental action does not jeopardize a fundamental right

or is not predicated on a suspect classification, it is "presumed to be valid and will be sustained if

[the governmental action] is rationally related to a legitimate state interest."  *City of Cleburne v.*

*Cleburne Living Center*, 473 U.S. at 440.  *See also Coalition for Equal Rights, Inc. v. Ritter*, 517

F.3d 1195, 1200 (10th Cir. 2008) (when social or economic regulations are measured against the

rational basis standard, the court simply asks whether there are plausible reasons for the

challenged action).

Defendants assert that the Division of Motor Vehicles' policies and procedures for

issuing identification cards have become more stringent since 2000 as part of an effort to address

identity theft in Colorado involving driver licenses and identification cards.  *See* Affidavit of

Roni White, attached as Exhibit 2 to Defendants' Motion for Summary Judgment.  The  Division

of Motor Vehicles has concluded that "the ability to change names slightly, then make additional

changes incrementally is one often used method of developing a new identity with which to get a

new license or identity card."  *Id.*  Defendants also contend that incremental name changes have

a "negative impact on highway safety" and allow individuals with criminal intentions to "create

---

[10]In the past, Plaintiff has cited with favor *Jech v. Burch*, 466 F. Supp. 714, 718-19 (D.
Hawaii 1979), which held that the constitutional right of privacy found in the Fourteenth
Amendment protects a parent's common law right to give their child any name they wish.
However, the court in *Jech* seemed to fall back on the rational basis standard in recognizing that
a parent's privacy right to name their child as they wish could be constrained by legislative
action that bears some reasonable relation to a purpose within the competency of the state to
effect.

new identities to commit welfare fraud and engage in terrorist activities." *Id.* While Mr. Brown disputes the stated rationale underlying the Division's policies, those policies are entitled to a "strong presumption of validity." *See FCC v. Beach Communications,* Inc., 508 U.S. 307, 314 (1993). *See also League of United Latin American Citizens (LULAC) v. Bredesen*, 500 F.3d 523, 536 (6th Cir. 2007) (in applying the rational basis test to claims challenging Tennessee's law regulating driver's licenses, held that the state had no obligation to produce evidence sustaining the rationality of its regulatory classification).

The Division of Motor Vehicles further claims that its procedures and policies for issuing identification cards have become more exacting since Mr. Brown received his first state identification card, as a result of federal regulations. *See* White Affidavit, attached as Exhibit 2 to Defendants' Motion for Summary Judgment. The federal Real ID Act was passed in 2005 to prevent fraud in the acquisition of state-issued identification cards. *See Fahy v. Commissioner, New Hampshire Department of Safety*, 2006 WL 827805, *12 (D. N.H. 2006). *See also United States v. Mendez*, 2008 WL 4499485, *4 (W.D. Va. 2008) ("The Real ID Act was intended to implement a nationwide effort to prevent terrorism, reduce fraud, and improve the reliability and accuracy of identification documents that State governments issue"). According to Defendants, "federal regulations currently require that all states, when issuing a driver license and/or identification card, must use a person's full name, including his or her middle name." Under the deferential standard I must apply, the Division of Motor Vehicles has presented a rational basis for its policies and procedures concerning identification cards.

For the foregoing reasons, I conclude that Mr. Brown has not presented sufficient facts or legal authorities to support the constitutional violations alleged in his Amended Complaint. This

court does not find that the Division of Motor Vehicles deprived Mr. Brown of a fundamental right or benefit protected under the Fourteenth Amendment. Accordingly, I recommend that Defendants' Motion for Summary Judgment be granted and judgment entered in favor of Defendants.

B.     *Plaintiff's Motion for Leave to Amend Complaint*

On May 27, 2008, Mr. Brown filed a Motion for Leave to Amend Complaint (doc. # 124). Defendants filed their Response (doc. # 129) on June 16, 2008, and Plaintiff filed a Reply to Defendants' Response (doc. # 134) on July 2, 2008.

Mr. Brown's proposed Second Amended Complaint, consisting of 73 handwritten pages and ten multi-paged "exhibit packages," appears to assert the same constitutional claims raised in his earlier Amended Complaint. However, the proposed Second Amended Complaint defies simple classification. Portions of the proposed pleading provide a synopsis and re-argument of points raised in previous filings. Other passages in the proposed Second Amended Complaint read like a supplemental response to Defendants' Motion for Summary Judgment. Plaintiff's proposed Third Claim for Relief consists largely of Mr. Brown's rambling account of his April 2008 trip to the Sand Creek "Cowboy Action Shooting" event and his desire to attend a gun show in Durango, Colorado. The proposed Second Complaint is replete with case citations and legal argument. *Cf. Jones v. Kern High School District*, 2008 WL 3850802, *2 (E.D. Cal. 2008) (noting that case citations and legal arguments have no place in a complaint and should be deleted).

The Second Amended Complaint seeks to join as defendants Jenna Mondragon ("currently a Driver Examiner II for the Colorado D.M.V."), Ana Bowman ("Asst. A.G.,

formerly representing the Colorado D.M.V."), Todd Larson ("Asst. A.G. present counsel for

Defendants"), Roxy Huber ("present Director, Colorado D.M.V."), Roni White ("presently Op.

Dir. for the Driver's License Program, Colorado D.M.V."), and John Suthers ("Colorado

Attorney General").

      Finally, the proposed Second Amended Complaint seeks the following relief:

1.      Concerning First Claim for Relief, Claimant asks the Court to adopt his paraphrasing of *Jech v. Burch*, 466 F. Supp. 714, from 78 FPD 3d 475 attached as Exhibit I.

2.      In regards to the Second Claim for Relief, Movant asks the Court to approve and issue his proposed Decree, attached as Exhibit J.[11]

3.      In reference to the Third Claim for Relief, Petitioner requests the Court to make an Equal Protection Ruling.

4.      In consideration of his Fourth Claim for Relief, Plaintiff seeks a ruling that in regards to Civil Rights Violations in consideration of 18 U.S.C. § 241 and § 242 the victim has a right to prosecution should they prefer that mode of Justice, that 18 U.S.C. § 3771 and the Federal Rules of Criminal Procedure Rule 3, should have provisions allowing victims to press charges, and that for a U.S. Attorney to obstruct prosecution when there is a viable case would amount to the Obstruction of Justice in violation of Federal Law.

      The court acknowledges the well-settled rule that motions to amend should be freely

granted when justice requires. *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459

(D. Colo. 1995). In considering the "needs of justice," the court must take into consideration the

interests of all parties. A motion to amend must be left to the sound discretion of the district

---

[11]Plaintiff's proposed "Decree on Common Law Name Change" would have this District Court Order that Plaintiff's legal name is Wesley R. Brown and that he cannot "be made to answer to his birth name Wesley Ray Brown." The proposed Decree would further provide that any violation of the Decree would be actionable under 42 U.S.C. § 1983, and possible criminal prosecution under 18 U.S.C. §§ 241 and 242.

court, and must be decided based upon a careful evaluation of multiple factors. *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984). *See also Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997).

While Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely given, that requirement does not apply where an amendment obviously would be futile. *T.V. Communications Network, Inc. v. Turner Network Television, Inc*., 964 F.2d 1022, 1028 (10th Cir. 1992). *See also Simon v. Navon*, 951 F. Supp. 279, 283-84 (D. Me. 1997) (motion to amend may be denied where proposed amendment advances claim that is legally insufficient on its face). Where a party opposes a motion to amend on grounds of futility, the court must apply the same standard that governs a motion to dismiss. *Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc.*, 944 F. Supp. 1411, 1441 (D. Min. 1996). *See also Jefferson County School District No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (proposed amendment is futile if the complaint, as amended, would be subject to dismissal). Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate "when it appears that the plaintiffs can prove no set of facts in support of the claims that would entitle them to relief, accepting all well pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiffs." *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 896-97 (10th Cir. 1997). *See also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (to dismiss a complaint, a district court must find that the complaint "lacks an arguable basis either in law or in fact").

Here, Plaintiff's Motion for Leave to Amend must be denied as futile. As previously noted, Mr. Brown's due process and equal protection claims fail to assert the violation of a fundamental right. Those same claims are renewed in the proposed Second Amended

Complaint.  To the extent that the Second Amended Complaint seeks to assert claims under federal criminal statutes, those claims would  be futile and dismissed as a matter of law. "Criminal statutes cannot be enforced by civil actions."  *Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991) ("private citizens generally have no standing to institute criminal proceedings").  Plaintiff does not have standing to institute criminal proceedings through a civil lawsuit.  *Martinez v. Ensor*, 958 F. Supp. 515, 518 (D.Colo. 1997).  *See also Bass Angler Sportsman Society v. United States Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971) (recognizing "the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions").

The proposed Second Amended Complaint also does not comply with Fed.R.Civ.P. 8, which states that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While *pro se* pleadings should be construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers, *Gibson v. City of Cripple Creek,* 1995 WL 94483 (10th Cir. March 1, 1995), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim.  It is impossible to reconcile Mr. Brown's 73-page proposed pleading with the standard imposed by Rule 8.  *Compare Ausherman v. Stump*, 643 F.2d 715 (10th Cir. 1981) (describing plaintiff's rambling, 63-page narrative as "prolix" and violative of Rule 8(a)) and *Toevs v. Reid*, 267 Fed. Appx. 817 (10th Cir. 2008) (in reversing the dismissal of plaintiff's complaint, noted that the 13-page pleading alleged violations of identifiable constitutional rights supported by factual assertions tethered to particular

defendants).  Plaintiff's Motion for Leave should be denied as futile based upon pleading deficiencies.  *See General Steel Domestic Sales, LLC v. Steelwise LLC*, 2008 WL 2520423, *3 (D. Colo. 2008) (holding that Fed.R.Civ.P. 8 is a legitimate ground to protest a proposed amended complaint).

Plaintiff's proposed Second Amended Complaint seeks to assert claims against several new defendants.  However, liability under 42 U.S.C. § 1983 must be based upon a defendant's personal involvement in the constitutional violation.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("personal participation is an essential element in a § 1983 claim").  To establish personal participation, the plaintiff must show that the defendant caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  An individual personally participates in the deprivation of a constitutional right if (a) he participates directly in the constitutional violation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent.  *See Smith v. Rowe,* 761 F.2d 360, 269 (7th Cir.1985).  Plaintiff's proposed Second Amended Complaint fails to allege facts that would demonstrate personal participation by several of the putative defendants.  Indeed, some putative defendants appear to be included in the Second Amended Complaint simply because they served as attorney of record for the named Defendants.

Finally, the proposed Second Amended Complaint contains isolated references to "the alleged conspirators" and a "conspiracy."  Yet, to survive a motion to dismiss, a complaint

alleging a conspiracy to deprive a person of constitutional rights must contain more than conclusory, vague or general allegations of conspiracy. *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993). *Cf. Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (upholding dismissal of an amended complaint that failed to provide factual averments as to the nature of the alleged conspiracy or the defendant's role in the alleged activities); *Alfaro v. E.F. Hutton & Co.*, 606 F. Supp. 1100, 1117-18 (E.D. Pa. 1985) (holding that a general conspiracy allegation without a statement of facts is insufficient to state a cause of action). The proposed Second Amended Complaint fails to identify the members of the alleged conspiracy, or explain what role each alleged co-conspirator played. *Cf. Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (noting that "parallel but independent action by actors does not import conspiracy"). *See also Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999) (conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator). Plaintiff's proposed pleading does not describe any communication, cooperation or command from which a conspiracy could be inferred. Mr. Brown's conclusory allegations of a conspiracy would not suffice to survive a motion to dismiss.

For the foregoing reasons, I conclude that Mr. Brown's proposed Second Amended Complaint, as drafted, would be futile and recommend denial of his Motion for Leave to Amend Complaint on that basis.

C.     *Plaintiff's Motion for Order to Disclose*

On May 123, 2008, Mr. Brown filed a Motion for Order to Disclose F.R.C.P. Rule(s) 26, 34, and 37 (doc. # 115). With this rambling, 18-page motion, Plaintiff purports to advise Defendants

24

a.    of the evidence he want to present at trial aside from C.D.R. # 32,

b.    of the witnesses he hopes to call,

c.    and his intentions regardless of what action they make take after this

      pleading.

Plaintiff also asks the court to "issue an Order to Disclose upon Defendants."  This motion must

be denied in light of the court's recommendation to grant Defendants' Motion for Summary

Judgment and dismiss the pending action.  Even if the action were to proceed, this motion would

be denied as premature.  With this motion, Plaintiff appears to be moving to compel under

Fed.R.Civ.P. 37, without ever actually serving discovery requests.

D.    *Request for Recognition of an "Other Similarly Situated"*

This filing is incomprehensible.  It appears that Mr. Brown provided the requester, Robin

White, with portions of this court's January 18, 2008  Recommendation (doc. # 90), as well as

other materials from the court docket.   Robin White asks the "Court to consider me an 'other

similarly situated' in that I would like to have the name used for my 'customary signature'

printed on my Colorado Driver's License, ID Card, instead of my birthname."  There is no

certificate of service attached to this Request and no indication that Defendants were served with

this document.

If the court liberally construes the instant Request as a motion to intervene, it must be

denied for failure to satisfy the requirements of Fed.R.Civ.P. 24.  There is nothing on the face of

the Request to suggest that the disposition of this case would, as a practical matter, impair

White's ability to protect his/her interests.  Moreover, it is impossible for the court to determine

whether White's situation is so factually similar to Mr. Brown's as to share a common question

of law or fact. For example, it is impossible to determine whether White is barred from petitioning the state courts for a formal name change. Finally, Rule 24 provides that a "motion to intervene must be served on the parties as provided in Rule 5," must state the grounds for intervention, and be accompanied by a pleading that sets out the claim for which intervention is sought. None of these procedural requirements have been satisfied.

E.     *Plaintiff's Ex Parte Motion Concerning Plaintiff's Claim of Unconstitutionality of 6 C.F.R. Part 37*

Mr. Brown filed this motion (doc. # 117) on May 19, 2008. On December 1, 2008, Plaintiff filed a Notice of Withdrawal, #117 Ex Parte Motion . . ." In view of that action, the Ex Parte Motion is deemed withdrawn and no longer pending.

## CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that:

(1)     Defendants' Motion for Summary Judgment (doc. # 105), filed on March 31, 2008, be GRANTED; and

(2)     Plaintiff's Motion for Leave to Amend Complaint (doc. # 124), filed on May 27, 2008, be DENIED.

Further, IT IS ORDERED that:

(1)     Robin White's Request for Recognition of an "Other Similarly Situated" (doc. # 100), filed on March 24, 2008, is DENIED;

(2)     Plaintiff's Motion for Order to Disclose, F.R.C.P. Rule(s) 26, 34 and 37 (doc. # 115), filed May 13, 2008, is DENIED; and

(3)     Plaintiff's Ex Parte Motion Concerning Plaintiff's Claim of Unconstitutionality of 6 C.F.R. Part 37 (doc. # 117), filed on May 19, 2008, is WITHDRAWN and

therefore MOOT.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.

1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate

Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm

waiver rule does not apply when the interests of justice require review).

      Dated at Denver, Colorado this 12th day of February, 2009.

                            BY THE COURT:


                          s/ Craig B. Shaffer
                         United States Magistrate Judge