IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01092-MSK-CBS

WESLEY R. BROWN,

      Plaintiff,

v.

MICHAEL COOKE, Exec. Dir. CO. Div. of Motor Vehicles, and
ROBERT MORGAN, Office Manager, Aurora Drivers License Office,

      Defendants.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS AND
ADOPTING RECOMMENDATION**
_____

**THIS MATTER** comes before the Court pursuant to Plaintiff Wesley R. Brown's

Objections **(# 144)** to United States Magistrate Judge Craig B. Shaffer's February 12, 2009

Report and Recommendation **(# 139)** that the Defendants' Motion for Summary Judgment

**(#105)** be granted and Mr. Brown's Motion to Amend the Complaint **(# 124)** be denied; Mr.

Brown's Motion for Summary Judgment **(# 141)**; and Mr. Brown's Motion for Extension of

Time **(# 142)**.

<u>**FACTS**</u>

The factual and procedural background of this matter is set out at length in Magistrate

Judge Shaffer's thorough Recommendation, and the Court deems that recitation incorporated

herein. In short, although Mr. Brown was given the name "Wesley Ray Brown" at birth, since at

least age 17, he has primarily identified himself as "Wesley R. Brown," and has obtained a

1

variety of identification and other documents bearing his chosen name over the years. Mr. Brown contends that these actions are sufficient to constitute a legal change of his name at common law.

On February 6, 2006, Mr. Brown applied for an identification card[1] from the Colorado Division of Motor Vehicles. Although he produced a California driver's license with the name "Wesley R. Brown" as proof of his identity, the Division of Motor Vehicles insisted that he verify his identity with his birth certificate. C.R.S. § 42-2-302(2)(a). When he returned to the office to do so on March 16, 2006, he again requested that the identification card bear his chosen name. However, relying on C.R.S. § 42-2-302(1)(a)(I), which requires that identification cards be issued in the "true name" of an applicant, the Division of Motor Vehicles presented Mr. Brown with a card bearing the name "Wesley Ray Brown," the name shown on Mr. Brown's birth certificate. Mr. Brown refused the tendered card and commenced this action.[2]

As both the Magistrate Judge and this Court read his Amended Complaint **(# 4)**, Mr. Brown asserts two claims under 42 U.S.C. § 1983: (i) a claim that the Division of Motor Vehicles deprived him of a liberty or property interest in the use of his chosen name without Due Process of law in violation of the 14th Amendment to the United States Constitution; and (ii) a claim that the Division of Motor Vehicles' actions deprived him of Equal Protection of the laws,

---

[1] From the parties' references and citations, the Court assumes that Mr. Brown was seeking a non-driver "identification card," rather than a driver's license. However, the precise nature of the document he was requesting is not particularly germane to the analysis herein.

[2] Mr. Brown is prevented by law from resorting to the most simple and expeditious way of resolving this issue – by invoking formal legal proceedings to change his name. C.R.S. § 13-15-101(2)(b) provides that the courts will not grant a petition for change of name by an individual who has previously been convicted of a felony. Mr. Brown has been convicted of at least two felonies.

also in violation of the 14th Amendment. The Defendants moved for summary judgment (**# 105**), arguing: (i) with regard to the Due Process claim, Mr. Brown cannot show that he was deprived of a recognizable liberty or property interest, nor show that he was deprived of procedural Due Process in the Division's consideration of his request; and (ii) with regard to the Equal Protection claim, he cannot show that he is a member of a suspect classification, nor show that the Colorado's statutes requiring identification documents to bear an individual's "true name" lack a rational basis. Separately, Mr. Brown moved to amend his complaint (**# 124**) in various respects and to add additional claims against new defendants.

This Court referred both motions to the Magistrate Judge for a recommendation as to the appropriate disposition. On February 12, 2009, the Magistrate Judge issued the instant Recommendation (**# 20**) that the Defendants' summary judgment motion be granted and Mr. Brown's motion to amend the complaint be denied. Specifically, the Magistrate Judge found: (i) although the common law permits a person to adopt whatever name they choose, it does not entitle that person to demand that others acknowledge and use that chosen name; (ii) there is no persuasive authority recognizing a constitutionally-protected interest in a person's right to insist that others recognize a name they have chosen for themselves; (iii) accordingly, Mr. Brown failed to identify a constitutionally-protected liberty or property interest sufficient to support his Due Process claim; (iv) Mr. Brown has not identified his membership in a suspect class for purposes of the Equal Protection analysis, as neither a criminal record nor homelessness constitutes a suspect classification; (v) in the absence of infringement upon a suspect classification or a fundamental right, the court examines the challenged state statute on rational basis grounds; (vi) there is a rational basis for Colorado's insistence that identification cards bear

an individual's full, legal name, and thus, the Defendants are entitled to summary judgment on Mr. Brown's Equal Protection claim; (vii) Mr. Brown's request for leave to amend the complaint should be denied on futility grounds, as his existing claims fail for the reasons described above and the new claims he seeks to add fail to allege adequate personal participation of the newly-added defendants and are not cognizable; and (viii) the proposed complaint is excessively prolix in violation of Fed. R. Civ. P. 8.

Mr. Brown timely[3] filed Objections **(# 144)** to the Recommendation. Specifically, he contends: (i) he mistakenly represented that his enlistment in the military was under his chosen name, when, in fact, a handful of documents relating to his military service bear his birth name; (ii) the statutory reference to "true name" should be construed to refer to "the actual behavior and reality of the situation" – *i.e.* that Mr. Brown contends that his chosen name is indeed his "true name," *citing Hauser v. Calloway*, 36 F.2d 667, 669 (8th Cir. 1929); (iii) C.R.S. § 42-2-119, governing changes the name of a licensee, is relevant here, even though "it isn't claimant who wants to change the name on his previous license"; (iv) the effect of a common-law name change is to render the chosen name to be a person's "legal name just as though given at birth," *citing In re Liebowitz*, 49 F.Supp. 953, 954 (N.D. Ill. 1943); (v) language in C.R.S. § 42-2-302 governing "reissuance" of a license confers a "legal entitlement to warrant protection by administrative hearing and/or judicial review"; (vi) the decision by a Colorado District Court to deny Mr. Brown's formal petition for a change of name under C.R.S. § 13-15-101 was unconstitutional (and/or the statute itself is unconstitutional), as it infringes upon the full faith and credit clause;

---

[3]Mr. Brown sought **(# 142)** an extension of the 10-day period for filing his Objections, citing various obstacles to his compliance with that deadline. The Court grants that motion and deems his Objections to be timely filed.

4

(vii) the Magistrate Judge misconstrued the rationale of *Application of Dengler,* 287 N.W.2d 637, 639 n. 1 (Minn. 1979); (ix) "three federal courts have called common law name change a 'right,'" *citing U.S. v. Mount*, 757 F.2d 1315, 1318 (D.C. Cir. 1985); *Azeez v. Fairman*, 604 F.Supp. 357, 362 (D. Ill. 1985); *U.S. v. Duke*, 458 F.Supp. 1188, 1189 (S.D.N.Y. 1978); (x) he has more than an "abstract need" for an identification card that bears his correct name, as such cards are often the most "concise" proof of identity; (xi) the Magistrate Judge did not consider *Salaam v. Lockhart*, 905 F.2d 1168 (8th Cir. 1990); (xii) the Magistrate Judge did not properly consider *U.S. v. Cox*, 593 F.2d 46 (6th Cir. 1979); (xii) C.R.S. § 42-2-302(1)(a)(I) creates a legal requirement that the Division of Motor Vehicles issue a license when all of the criteria are met, and provides for administrative review, thus giving rise to a right protected by Due Process; (xiii) Mr. Brown challenges **(# 141)** the constitutionality of REAL ID Act, 49 U.S.C. § 30301 *et seq.*, the enabling act for 6 C.F.R. § 37, and the Court should adjudicate that challenge before considering the merits of the Recommendation; (xiv) the Equal Protection claim is premised upon Colorado affording differing protection to individuals who have formally sought to change their names as opposed to those relying upon a common-law name change; and (xv) the bases cited by the Magistrate Judge as rationally supporting the Colorado statute are not, in fact, furthered by requiring that one's birth name appear on an identification card.

Separately, Mr. Brown has filed a Motion for Summary Judgment **(# 141)**, seeking a declaration that 49 U.S.C. § 30301 and the associated regulations, 6 C.F.R. § 37, "unconstitutionally infringe[ ] on [his] common law right to carry on all his affairs" under his chosen name. In addition to *In re Liebowitz*, cited above, Mr. Brown cites *Jech v. Burch*, 466 F.Supp. 714 (D. Hi. 1979); the three cases cited above at point (ix) of his Objections; and

discussion of the REAL ID Act's regulations at 73 Fed. Reg. 5272- 5340. He argues that various terms in the regulations should be construed in ways favorable to the outcome he seeks here.

**ANALYSIS**

**A. Standard of review**

In considering the Plaintiff's Objections, the Court is mindful that a *pro se* plaintiff is entitled to liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the requirement that the Court read the Plaintiff's pleadings broadly does not relieve the Plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. *Id.*

Pursuant to Fed. R. Civ. P. 72(b), a party may file specific objections to the Recommendation of a Magistrate Judge regarding a dispositive motion. The Court will review the underlying matter *de novo* as to those areas to which specific objection is made. Fed. R. Civ. P. 72(b); *U..S. v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

Where, as here, the moving party does not have the burden of proof at trial, it must point

to an absence of sufficient evidence to establish the claim or defense that the non-movant is

obligated to prove. If the respondent comes forward with sufficient competent evidence to

establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce

sufficient competent evidence to establish its claim or defense, the claim or defense must be

dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Objections**

With regard to the summary judgment motion, the Magistrate Judge's Recommendation

can be distilled down to two specific findings: (i) there is no constitutionally-protected right to

compel others to acknowledge and accept a change of name effectuated by common-law; and (ii)

the state has a rational basis in refusing to accept and acknowledge common-law name changes

when issuing identification cards. Although Mr. Brown's Objections touch on a variety of

issues, ultimately, he must be able to overturn at least one of these findings in order to avoid summary judgment.

      1. <u>Due Process claim</u>

Certain principles are not in material dispute in this action. The common law of many states, including Colorado, recognizes the ability of persons to change their name, in most instances, simply by making use of their newly-chosen name. *In re Marriage of Nguyen*, 684 P.2d 258, 260 (Colo. App. 1983) (acknowledging common-law right to change name); *Eisenberg v. Strasser*, 768 N.Y.S.2d 773, 776 (N.Y. Sup. Ct. 2003) (common-law change typically effected simply by use of new name); *In re Arnett*, 56 Cal.Rptr.3d 1, 3 n. 3 (Cal. App. 2007) (same). And, as Mr. Brown points out in his Objections, many courts have observed that the effect of a common-law name change is to make the chosen name "his legal name just as though given at birth," *see e.g. Liebowitz*, 49 F.Supp. at 954, although this Court's research has revealed no Colorado case that expressly stands for that proposition.[4]

For purposes of the Due Process claim, the more difficult question presented here is whether a person possesses a constitutional right to compel the state to acknowledge and accept a name change effected by resort to the common law. In order to state a Due Process claim, Mr. Brown must first show that he was deprived of a liberty or property interest protected by the Constitution. *Potts v. Davis County*, 551 F.3d 1188, 1192 (10th Cir. 2009); *Couture v. Board of*

---

      [4]The Court has some reason to doubt that such a rule would apply in states, such as Colorado, that limit the ability of certain persons to effectuate name changes through a statutory process. As stated above, C.R.S. § 13-15-101(2)(b) prohibits convicted felons from availing themselves of the statutory name-change process. If a convicted felon could effectuate a legally-recognized name change simply by resorting to the common-law process instead, the prohibition in C.R.S. § 13-15-101(2)(b) would be rendered entirely meaningless.

*Education*, 535 F.3d 1243, 1256 (10th Cir. 2008). Thus, the first issue is whether the Division's refusal to issue an identification card in Mr. Brown's chosen name implicates a liberty or property interest of constitutional dimensions.

Perhaps the closest cases on this point are *Jech v. Burch*, 466 F.Supp. 714, 719 (D. Hi. 1979) and *Henne v. Wright*, 904 F.2d 1208, 1213-14 (8th Cir. 1990).[5] In both cases, the plaintiffs were parents who wanted to give their child a unique surname, belonging to neither parent, in violation of state laws that required all children to be named (and birth certificates to be issued) under either or both parents' surnames. (*Jech* acknowledged the possibility of the parents unilaterally and temporarily changing their own surname by operation of common law; *Henne* makes no mention of the possibility of a common-law name change.) The parents sued, claiming the state laws violated fundamental rights protected by the U.S. Constitution. Drawing largely on U.S. Supreme Court precedent recognizing a right to "privacy" in various, albeit unrelated, situations, the court in *Jech* found that the parents had a constitutionally-protected liberty interest in "giv[ing] their child any name they wish." 466 F.Supp. at 719. By contrast, the court in *Henne*, reached the opposite conclusion, finding that, to the extent there was any "deeply rooted" tradition regarding the naming of children, that tradition was one in which the child received one of the parents' surnames, not whatever unique name the parents chose for the child. 904 F.2d at 1214-15.

Although this Court finds the decision in *Henne* somewhat more persuasive – among other things, it more recent in time, from a higher court, and its analysis is more disciplined and

---

[5]*Henne* cites two additional District Court decisions reaching the same conclusion as *Jech*: *Sydney v. Pingree*, 564 F.Supp. 412, 413 (S.D. Fl. 1982) *and O'Brien v. Tilson*, 523 F.Supp. 494, 496 (E.D. N.C. 1981). These cases do not materially add to the analysis in *Jech*.

focused on precedent while *Jech*'s analysis relies largely on conclusions and epigrams – neither opinion conclusively answers the question presented here. Both statutes acknowledge that any purported liberty interest would arise out of a body of caselaw that recognizes individual's fundamental rights as they relate to decisions concerning reproduction and child rearing. *See e.g. Henne*, 904 F.2d at 1214; *Jech*, 466 F.Supp. at 719. But the facts presented here – an adult's decision to change his or her name and demanding governmental recognition of that change – falls outside that paradigm, and the Supreme Court's precedents recognizing privacy interests in decisions made by parents in raising children are not implicated in the current circumstances. Thus, the Court finds that neither *Jech* nor *Henne*, individually or in concert, provide a clear approach to resolving the issue presented here. Accordingly, the Court examines the issue independently, beginning with the most fundamental constitutional principles.

With regard to defining a "liberty" interest, the Court need not repeat the Magistrate Judge's correct and concise discussion of that issue, beginning at the last sentence on page 10 of the Recommendation and running to the first full paragraph of page 12, and this Court adopts that discussion herein.[6] Put simply, a "liberty" interest is one that, when its contours are carefully defined, is found "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). As discussed above, it may be fair to say that the common-law right to change one's name is so widely and historically recognized that it may fit that description. But Mr. Brown is not challenging any abrogation of the common-law right to change one's name. "Carefully described," *Id.* at 721, the right Mr. Brown invokes here is the

---

[6]The Court notes that none of Mr. Brown's extensive Objections specifically find fault with this portion of the Recommendation.

right to compel the Government to officially acknowledge and abide by any common-law name change an individual chooses.

Other than the somewhat distinguishable *Jech*, Mr. Brown cites no case, much less a "deeply rooted" body of caselaw, squarely acknowledging such a right. To the contrary, a considerable body of caselaw recognizes that the Government is under no obligation to conform its own records to acknowledge an individual's decision to change his name, particularly where that change was effected under the common-law method of simple use. *Masjid Muhammed - D.C.C. v. Keve*, 479 F.Supp. 1311, 1322-1324 (D. Del. 1979) (inmates who changed name for religious reasons had First Amendment right to be free of punishment for refusing to continue to use old names, but "[i]t does not follow . . . that plaintiffs are entitled to have the institution and its staff utilize their [new] Muslim names for all purposes. . . [a] Muslim inmate has no constitutional right to dictate how prison officials keep their records of prisoners"); *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986) (citing cases for the proposition that "prison authorities do not have to recognize a religiously motivated name change on the prison's internal records"); *Barrett v. Virginia,* 689 F.2d 498, 503 (4th Cir. 1982) (although prison could not refuse to deliver mail addressed to inmate under name he adopted at common law for religious purposes, "the mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right. How prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene"); *Salahuddin v. Coughlin*, 591 F.Supp. 353, 359 (S.D.N.Y. 1984) (finding no constitutional violation in prison policy that would recognize and acknowledge statutorily-effected name changes but would not recognize common-law name changes); *see also Petition of*

*Variable for Change of Name v. Nash*, 190 P.3d 354, 355-56 (N.M. App. 2008) (affirming court's refusal to approve petitioner's request to change his name to "Fuck Censorship!" but acknowledging that petitioner was free to effect such a change by common-law use; "one has a common law right to assume any name, and a right to engage in a social experiment, but one does not have a right to require the state to participate in the experiment").[7] Taken as a whole, this body of caselaw refutes any argument that there is a longstanding, fundamental right of citizens to compel the Government to accept a common-law name change and reform its records accordingly. Accordingly, Mr. Brown has failed to demonstrate that the Division of Motor Vehicles' refusal to acknowledge his common-law name change deprived him of a liberty interest sufficient to support a Due Process claim.

Next, the Court turns to the question of property interests. A constitutionally-protectible property interest does not arise simply because the Government has deprived someone of something that he desires or has a unilateral expectation of receiving; it arises only when the person has a "legitimate entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). That entitlement must be created by existing rules and understandings, such as those embodied in non-discretionary provisions of state or federal law. *Id.* Here, the Court cannot

---

[7]*But see Salaam v. Lockhart*, 905 F.2d 1168, 1172 (8th Cir. 1990) (requiring that prison modify its internal records to reflect inmate's religiously-motivated name change). The Court notes that *Salaam*, like many of the cases cited above, is premised upon religiously-motivated name changes that implicate the First Amendment's constraints on governments power to burden religious exercise. By contrast, Mr. Brown does not assert that his name change was religiously motivated. As a result, *Salaam*'s finding that the First Amendment requires the state to modify its records to accept a religiously-motivated name change would not be in conflict with an outcome here that does not require Colorado to recognize Mr. Brown's non-religious name change. In any event, a single case like *Salaam* is insufficient to show that the right to compel governmental recognition of a name change is sufficiently "deeply rooted" in judicial tradition to give rise to a liberty interest.

find that state law gives Mr. Brown a "legitimate entitlement" to an identification card with his chosen name on it for several reasons.

First, the very language of C.R.S. § 42-2-302 confers multiple layers of discretion upon the Division of Motor Vehicles in deciding whether to issue an identification card. C.R.S. § 42-2-302(1)(a)(I) is entitled "Department <u>may</u> issue" and states "A person . . . <u>may</u> be issued an identification card." (Emphasis added.) Statutory use of the word "may" is presumed to grant discretionary power, absent a showing that it was intended to have mandatory effect. *U.S. v. Bowden*, 182 F.2d 251, 252 (10th Cir. 1950). Nothing in the text of § 42-2-302 indicates that the use of the word "may" was intended to be anything more than discretionary.[8] The statute also confers discretion upon the Department to decide what amount of documentation will be sufficient to establish the applicant's identity. C.R.S. § 42-2-302(1)(a)(I) (requiring "other identifying data the department may require"). Because Mr. Brown has not shown that he tendered documentation sufficient to satisfy the discretion of the Division of Motor Vehicles, he has not shown that he was "entitled" to the issuance of any identification card.

Second, Mr. Brown has not shown that state law entitled him to issuance of a card bearing his chosen name. C.R.S. § 42-2-302(1)(a)(I) provides that an identification card shall

---

[8]Among other things, many other provisions in the statute use the term "shall," suggesting that the Legislature clearly acted to confer and withhold discretionary power where it intended to do so.

One might argue that § 42-2-302(3)(a), which purports to list "the . . . reasons" upon which the Department "has the authority" to deny issuance of a card, should be read to be exclusive, thus confining the Department's discretion to refuse a card to the listed reasons. Assuming – without necessarily accepting – this argument, the Court would nevertheless find that the Department's refusal to issue the card requested by Mr. Brown fell within the first listed reason: "failure [of the applicant] to give the required or correct information" – that is, he failed to provide the documentation necessary to support an application for a card with his requested name. C.R.S. § 42-2-302(3)(a)(I).

bear its owner's "true name."  The phrase "true name" is not statutorily defined, but the

Defendants submitted an affidavit of Jenna Mondragon in support of their summary judgment

motion that establishes that the Division considers the phrase "true name" to require an

individual's full first, middle, and last names, as established by the supporting documentation

they present, to appear on an identification card.  Further, the Defendants submitted an affidavit

of Roni White that establishes that, for purposes of ascertaining a person's "true name," the

Division uses the name shown on the applicant's birth certificate, unless modified by a marriage

license or court order.  Mr. Brown has not come forward with evidence to refute the Defendants'

assertions as to the policy of the Division, and thus, even if he could show that state law entitled

him to an identification card, the undisputed evidence establishes that the Division would only

issue a card bearing the name shown on Mr. Brown's birth certificate, not his chosen name.

Accordingly, the Court finds that Mr. Brown has not shown that state law entitled him to

receive an identification card bearing his chosen name.  Thus, he cannot show a constitutionally-

protected property interest in obtaining such a card, and in the absence of a recognized liberty or

property interest to support his Due Process claim, that claim necessarily fails.

Mr. Brown's Objections contain several assertions that this Court understands to be

arguments that Mr. Brown does, in fact, possess a property interest in obtaining the identification

card he seeks.  First, he argues that the Division's definition of the term "true name" to mean the

name shown on an applicant's birth certificate, marriage license, or court order, ignores "the

reality of the situation."  One might argue that the Division's policy is shortsighted or unwise,

but in the absence of a constitutionally-protected liberty or property interest at stake, the U.S.

Constitution provides no means by which to remedy such flaws.  Where a state actor engages in

unwise policy that does not rise to the level of offending the U.S. Constitution, an individual's remedy, whatever it may be, lies with the state, not federal, courts.

Next, Mr. Brown makes a somewhat unclear argument that the use of the term "reissuance" in § 42-2-302 somehow creates an entitlement to some form of relief.  In pertinent part, his argument: asserts that the dictionary defines "reissue" to mean "to offer again what was offered before"; points out that C.R.S. § 42-2-302(3)(a) refers to the Division's "authority to cancel, deny, or deny the reissuance of the identification card"; and asserts that the Legislature "sees that 'reissuance' is enough of a legal entitlement to warrant protection by administrative hearing and/or judicial review."  As best the Court can determine, this argument harkens back to a dispute concerning whether or not Mr. Brown was required/permitted to request an administrative hearing to review the Division's decision.  C.R.S. § 42-2-302(3)(b). ("If the department cancels, denies, or denies the reissuance of an identification card of a person, such person may request a hearing pursuant to [C.R.S. § 24-4-105]").  By Recommendation dated January 18, 2008 **(# 90)**, the Magistrate Judge rejected an argument by the Defendants that Mr. Brown was required to exhaust his administrative remedies by requesting such a hearing before bringing this suit.  In doing so, the Magistrate Judge found that exhaustion is not generally required for § 1983 claims and, in any event, the Defendants' letter denying Mr. Brown's requested card "seems to imply that," in these circumstances (*i.e.* where the Division issued the card it believed Mr. Brown was entitled to but which Mr. Brown refused to accept), "a request for a denial hearing will not be granted."  *Id.*

This Court does not understand the Magistrate Judge to have affirmatively held that Mr. Brown could not request an administrative hearing under C.R.S. § 42-2-302(3)(b); the tentative

language used by the Magistrate Judge – "seems to imply," "seems to suggest" – is inconsistent with making a conclusive finding. Rather, the Court understands the Magistrate Judge to have been summarizing his understanding of the Defendants' position on the issue. The mere fact that the Defendants may believe that a review hearing is not available is not dispositive. It is entirely possible that Mr. Brown could have properly requested (or, perhaps, can still request) administrative (and ultimately judicial) review of the Division's decision in accordance with C.R.S. § 24-4-105. However, whether or not an administrative remedy is available to Mr. Brown has no bearing on the question of whether the Colorado statutes create a constitutionally-protected liberty or property interest in obtaining an identification card with a particular name, and thus, Mr. Brown's Objection on this point is without merit.

Next, Mr. Brown argues that "three federal courts have called common law name change a 'right,'" *citing U.S. v. Mount*, 757 F.2d 1315, 1318 (D.C. Cir. 1985); *Azeez v. Fairman*, 604 F.Supp. 357, 362 (D. Ill. 1985); *and U.S. v. Duke*, 458 F.Supp. 1188, 1189 (S.D.N.Y. 1978). The Court understands this to be Mr. Brown's argument that one's right to avail themselves of the common law process is either a well-settled "right" giving rise to a liberty interest or an entitlement giving rise to a property interest. It is unnecessary to discuss any of these cases in great detail,[9] as the premise of Mr. Brown's argument is flawed. As discussed above, the question for constitutional purposes with regard to a liberty interest is not whether the common-law right to change one's name is not longstanding or important; the Court has assumed that it is. The question presented here is more narrow: whether there is a concomitant right to compel the

---

[9]The Court notes, however, that the District Court opinion in *Azeez*, upon which Mr. Brown relies, was reversed on appeal, 795 F.2d 1296. This fact weakens, rather than strengthens, Mr. Brown's argument.

Government to accept and recognize a common-law name change. None of the three cases cited by Mr. Brown squarely address this more narrow issue. As to the property interest issue, the Court notes that none of the cases purport to interpret the extent to which Colorado state law creates an entitlement in an individual to an identification card, and thus, they are not probative on that question either.

Thus, the Court finds that Mr. Brown's Objections with regard to the Due Process claim are without merit, and the Court adopts the Magistrate Judge's Recommendation that summary judgment be granted to the Defendants on this claim.

## 2. Equal Protection claim

The manner in which the Court examines the Division's actions with regard to the Equal Protection claim depends on the nature of the interest that the Division's actions intrude upon. If Mr. Brown shows that the Division's actions implicated a fundamental right or categorizes persons based on suspect classifications, the Court applies the exacting "strict scrutiny" standard; otherwise, the Court presumes the statute or policy to be valid and Mr. Brown must show that the statute is not rationally related to a legitimate state interest. *A.C.L.U. of New Mexico v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008); *KT & G Corp. v. Attorney General of Oklahoma*, 535 F.3d 1114, 1137 (10th Cir. 2008).

As discussed above, the Court has already concluded that the Division's refusal to recognize a name change effected at common law does not implicate a fundamental right. Mr. Brown does not specifically object to the Magistrate Judge's finding that Mr. Brown has not shown that the Division's decision categorizes individuals by their membership in any suspect

class, and the Court adopts by reference that portion of the analysis at page 16 of the Recommendation.

Mr. Brown's Objections raise a new argument that the Magistrate Judge did not expressly consider: that the Division distinguishes between individuals who have secured a court order changing their name and individuals who have simply effected a name change at common law by merely using another name. Mr. Brown does not cite, and the Court is unaware of, caselaw addressing the question of whether effecting a name change solely by operation of common law is a "suspect classification" for Equal Protection purposes. Thus, the Court considers this question in the first instance. "Suspect classifications," for Equal Protection purposes, are those in which the defining characteristic is "so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). A suspect classification will usually reflect "a history of purposeful unequal treatment or [the imposition] of unique disabilities on the basis of stereotyped characteristics not truly indicative of" the realities of those possessing the defining characteristic. *Id.* at 441. Thus, the Supreme Court has recognized that governmental actions that distinguish on the basis of race, sex, or national origin typically reflect such stereotyped thinking, and thus, treats such governmental distinctions with suspicion and requires the Government to make a heightened showing that the distinction is warranted. *Id.* at 440.

Mr. Brown has not shown that persons who resort to the common law to effect a name change have suffered from a history of unequal treatment or special governmental disfavor. Indeed, if anything, he cites cases for precisely the opposite proposition: that courts have

repeatedly recognized that name changes effected at common law are typically as legally valid as those effected through a formal statutory process. *Liebowitz*, 49 F.Supp. at 954; *Eisenberg*, 768 N.Y.S.2d at 776-77. Nor has he shown that a state's decision to afford differing treatment to judicial name changes as opposed to common-law name changes is "seldom relevant to achievement of any legitimate state interest." As discussed below, there are many legitimate interests that are served by the state officially recognizing judicially-approved name changes but not common-law ones. In many day-to-day activities, an individual's decision to go by a different name will have no material consequences: the contracts and other private legal obligations he assumes under his chosen name remain as binding as if they were incurred in his given name. However, as discussed below, the fluidity and uncertainty that that ensue from the ease by which an individual effects common-law name changes can be antithetical to the state's interest in being able to identify its citizens with certainty and precision. Thus, the Court rejects any argument that Mr. Brown has shown that the Division's actions implicate a "suspect classification" warranting strict scrutiny.

Accordingly, the Court examines the Division's actions only to ascertain whether they are rationally related to a legitimate governmental interest. That test is satisfied when the policymakers "could rationally have decided that its classification might foster its purpose." *KT & G Corp.*, 535 F.3d at 1138. To defeat the presumption of legitimacy, Mr. Brown is required to show that the distinction fostered by the classification "is so attenuated" from the asserted goal as to render the decision arbitrary or irrational. *Id.* Ms. White's affidavit proffers several justifications for the Division's policy of refusing to acknowledge common-law name changes: the need to ensure that individuals have only one license or identity card at a time; the need to

ascertain whether a particular person's driving privileges have been revoked; to prevent identity theft effected by numerous, incremental changes to one's identity; to insure consistency among records; because federal regulations governing identification documents have tightened.  All of these are legitimate governmental objectives, and preventing individuals from obtaining identification documents in whatever name they may choose in their daily lives is certainly a rational way of achieving those goals.

Mr. Brown's Objections argue that the Division's policies do not rationally serve these goals.  This argument is largely in the form of conclusory assertions – e.g. that cases of fraud, identity theft, or terrorism have occurred despite efforts to tighten identity requirements and that such cases will "still have to be investigated."  The Court understands Mr. Brown to be arguing that the Division's policies do not rationally serve their purposes because they are not completely effective at preventing misuse of identification documents.  However, a perfect fit or complete calibration between policy and objective is not required in order to satisfy the "rational basis" test.  *Banker's Life and Cas. Co. v. Crenshaw*, 486 U.S. 71, 85 (1988).  The Equal Protection clause does not require the Government to choose the most effective or rational means to accomplish an objective; it only prohibits the Government from choosing a completely irrational means to do so.  So long as the Division's requirement that identification cards be issued in names reflected in a birth certificate or other certified document, rather than in whatever name an individual might choose to use, bears some rational relationship to its purpose – and this Court finds that it does – the Equal Protection clause is satisfied.

Accordingly, the Court overrules Mr. Brown's Objections and adopts the Magistrate

Judge's Recommendation that summary judgment be granted to the Defendants.[10]

### 3. Motion to amend and remaining matters

Mr. Brown does not register specific Objections with regard to the portion of the

Recommendation that recommends that the Court deny his motion to amend his complaint.

Having nevertheless reviewed the matter under the otherwise applicable *de novo* standard, the

---

[10]It is not necessary to reach several additional arguments urged by Mr. Brown in his Objections, but the Court addresses them briefly.

He contends that C.R.S. § 13-15-101(2)(b)'s ban on felons using the judicial name-changing procedure is unconstitutional. His argument on this point is not well-developed, but appears to be that Colorado's refusal to recognize common-law name changes somehow implicates the U.S. Constitution's "full faith and credit clause." (The Court assumes that Mr. Brown's position is that Colorado is refusing to recognize his change of name that first occurred under the common law of California.) This argument is misplaced. The "full faith and credit" clause applies to "public Acts, Records, and judicial Proceedings" of another state. *U.S. Const.*, Art. IV, § 1. Thus, although the clause might require Colorado to recognize a judicial order from California granting Mr. Brown a change of his name, the clause does not require Colorado to recognize a change effected informally by operation of California common law, particularly one that is inconsistent with Colorado's statutory law. *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 436 (1943) ("the full faith and credit clause does not ordinarily require [a state] to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and events").

Mr. Brown also contends that the REAL ID Act and its enabling regulations – which encourage (if not compel) states to tighten their practices with regard to identification documents – unconstitutionally infringes upon his common-law right to change his name. This argument fails for the same reason that Mr. Brown's Due Process argument fails: the right to have the government recognize a name change effected at common law is not a fundamental right conferred by the U.S. Constitution, and thus, may be infringed upon by laws having a rational basis (such as the REAL ID Act). In any event, the REAL ID Act is irrelevant to this case. As Ms. White's affidavit explains, the Act requires that identity documents bear the full first, middle, and last name of their owner. That same requirement is found in 1 CCR § 204-13 (identification card "shall state the full name" of the applicant). Thus, even if the REAL ID Act were unconstitutional – a finding this Court need not and does not make – Colorado law would still compel the result herein.

The Court has considered the remainder of the arguments in Mr. Brown's Objections and find them to be without merit.

Court agrees that the motion should be denied, for essentially the same reasons articulated by the Magistrate Judge. Accordingly, the Court adopts the recommendation and denies Mr. Brown's motion to amend.

Because the Court grants the Defendants' motion for summary judgment in its entirety, the Court need not independently consider Mr. Brown's motion for summary judgment with regard to his putative claim that the REAL ID Act is unconstitutional. That motion is denied, as moot.

### CONCLUSION

For the foregoing reasons, Mr. Brown's Objections **(# 144)** are **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's Recommendation **(# 139)**. The Defendants' Motion for Summary Judgment **(# 105)** is **GRANTED**, and Mr. Brown's Motion to Amend the Complaint **(# 124)** is **DENIED**. Mr. Brown's Motion for Summary Judgment **(# 141)** is **DENIED AS MOOT**. Mr. Brown's Motion for Extension of Time **(# 142)** is **GRANTED**. Judgment shall enter in favor of the Defendants contemporaneously with this Order.

Dated this 9th day of March, 2009

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge